

**SO ORDERED,**

**Judge Jason D. Woodard**

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

In re:                                  )
                                        )
   RICHARD PACE and                     )    Case No.:    13-14017-JDW
   MARY ANN PACE,                       )
                                        )
       Debtors.                         )    Chapter:    7
_____/

<u>**ORDER APPROVING APPLICATION FOR COMPENSATION (DKT. # 142)**</u>

This matter came before the Court for hearing on February 13, 2018, on the Application for Compensation (the "Application")(Dkt. # 142) filed by Selene D. Maddox, who is both the chapter 7 trustee (the "Trustee") and the attorney for the Trustee in this case. Ms. Maddox appeared at the hearing on her own behalf and on behalf of the Trustee, and attorney Kenneth Mayfield appeared on behalf of Richard and Mary Ann Pace (the "Debtors"). The Debtors attended the hearing, and Mrs. Pace testified.

1

The Court has considered the Application and the Debtors' response (Dkt. # 146) and memorandum brief in opposition to the Application (Dkt. # 148). In addition, the Court has considered the entire record in this case, the arguments of counsel, and the applicable law. For the reasons set forth below, the Application will be approved.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (B).

## II. FINDINGS OF FACT AND PROCEDURAL HISTORY[1]

The Debtors filed their voluntary joint chapter 7 bankruptcy petition on February 25, 2013 (Dkt. # 1). Along with their petition, they filed Schedule C – Property Claimed as Exempt, in which they claimed as exempt the full value of their home. The Debtors asserted in Schedule C that the home was worth $130,000, and that they were permitted to exempt its full value under § 85-3-21 of the Mississippi Code by each claiming, individually, up to a $75,000 homestead exemption. There are no liens on the Debtors' home, and

---

[1] To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

the Debtors hold title to the home as tenants by the entirety under Mississippi law.

On November 18, 2013, on her application and without any objections, the Court entered an order employing Ms. Maddox as attorney for the chapter 7 trustee under 11 U.S.C. § 327 (Dkt. # 14).[2] On December 3, 2013, on behalf of Trustee, Ms. Maddox filed an Objection to the Debtors' claim of exemptions, asserting that the Debtors were limited to a single, $75,000 exemption in their home (Dkt. # 15). After extensive briefing and a hearing, the Court ruled in favor of the Trustee and allowed a single, $75,000 exemption (Dkt. # 117). Following the Court's ruling, the Debtors struck a deal with their only joint creditor, Discover Bank, and the Court entered an Agreed Order providing that the Debtors pay Discover $8,336.73 directly, in installments of $138.90 per month (the "Agreed Order")(Dkt. # 133).

On December 20, 2017, after what both parties describe as extensive negotiation, Ms. Maddox filed the Application, requesting that the Court allow her compensation as attorney for the Trustee in the amount of $15,262.50 pursuant to 11 U.S.C. § 330,[3] to be paid when all other allowed administrative expenses are paid. Ms. Maddox has requested compensation

---

[2] An attorney may act both as the trustee and the attorney for the trustee. 11 U.S.C. § 327(d).

[3] All statutory citations are to Title 11, United States Code (the "Bankruptcy Code") unless otherwise noted.

3

for 55.5 hours of attorney time at $275.00 per hour, performed between November 14, 2013, and January 20, 2014.[4] At this time, Ms. Maddox has not requested any reimbursement of expenses or trustee percentage compensation, because she has not yet liquidated any assets or made any distribution on behalf of the Debtors' bankruptcy estate and there are no estate funds on deposit.

The Debtors oppose the Application. Their argument is two-fold: First, they contend that compensation is not permitted where no funds are collected and distributed to creditors under § 330(a), arguing that the Court may not require the Debtors to pay attorneys' fees to the Trustee's attorney out of their own pocket and not from estate assets. The Debtors further contend that even if Ms. Maddox was entitled to compensation, she would be limited to a percentage of the funds that the Debtors are paying to Discover under the terms of the Agreed Order. Second, the Debtors argue that payment of the requested attorney's fees will place an unnecessary burden on the Debtors, because the Debtors are already paying Discover the amounts due under the Agreed Order and because Mrs. Pace continues to experience significant medical problems. On the other hand, the Debtors do not argue

---

[4] Ms. Maddox's timesheet report, attached as an exhibit to her Application, included two additional hours of time billed in three separate time entries for services performed on December 20, 2014, and December 20, 2017, but Ms. Maddox indicated at the hearing she was not pursuing compensation for those three time entries.

4

that Ms. Maddox's requested fees are unreasonable, either with regard to the time expended or the rate charged.

### III. CONCLUSIONS OF LAW

It is clear from the Debtors' first argument that they misunderstand the nature of an application for compensation and what the approval of an application means. While the Court may approve an application under § 330, approval does not order payment directly from a debtor, nor does it imply that there are estate funds available to pay the approved fees. The result of this Court's approval of the Application is simply the creation of an administrative claim against the Debtors' estate – not an order that the Debtors pay Ms. Maddox's fees "out of their own pocket," apart from distributions or payments yet to be made in this bankruptcy case. The Debtors conflate the approval or allowance of compensation with an order that it be paid outside of the bankruptcy estate. Accordingly, the Debtors' second argument regarding the burden of the fees also fails, because there is no benefit/burden test that would serve to disallow otherwise permitted compensation, and because Ms. Maddox is not seeking to be paid outside of the bankruptcy estate.

In addition, the Debtors also conflate allowance of trustee compensation with allowance of reasonable compensation for an attorney who represents the trustee. Trustee compensation as provided for in § 330(a)(7) is

"treated as a commission" on all funds disbursed by the trustee in the case and is payable as provided under § 326(a). 11 U.S.C. § 330(a)(7). Here, Ms. Maddox is requesting compensation as attorney for the trustee under § 330(a)(1) and (3), and her Application will be considered in accordance with those standards.

### A. Reasonable Compensation

Section 330(a) provides that after notice and a hearing, the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . ." 11 U.S.C. § 330(a). A court may award professional fees not only for services that are necessary in that those services actually produce a material benefit to the estate, but also for those services that are objectively reasonable at the time they were rendered, even if they "ultimately . . . fail to produce an actual material benefit" to the estate. *Baron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 274 (5th Cir. 2015) (effectively abrogating the "material benefit" requirement imposed by *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.)*, 157 F.3d 414 (5th Cir. 1998)).

The United States Court of Appeals for the Fifth Circuit has provided the framework that bankruptcy courts should use in determining the amount of reasonable compensation. Bankruptcy courts must first calculate the amount of the lodestar, which is "equal to the number of hours reasonably

6

expended multiplied by the prevailing hourly rate in the community for similar work." *CRG Partners Group, L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655-56 (5th Cir. 2012) (citations omitted). "[B]ankruptcy courts then may adjust the lodestar up or down based on the factors contained in § 330 and consideration of the twelve factors listed in *Johnson*."[5]  *Id.* at 656 (citations and internal quotation marks omitted). Bankruptcy courts "have considerable discretion when determining whether an upward or downward adjustment of the lodestar is warranted." *Id.*

### B. Lodestar Calculation

#### 1. Reasonable Hours Expended

Ms. Maddox billed 55.5 hours rendering services to the Trustee during this case. The majority of this time was spent litigating the Trustee's successful Objection to the Debtors' Exemptions (Dkt. # 15). Having written the opinion and order sustaining that Objection, the Court is intimately aware of the complexities of that matter, and finds that the hours expended by Ms. Maddox in this case were reasonable. The Debtors do not argue otherwise.

---

[5] "*Johnson*" refers to *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 717 (5th Cir. 1974)(abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 97 (1989)), discussed below.

7

### 2. Prevailing Hourly Rate in the Community for Similar Work

The party seeking fees bears the burden of establishing that the hourly rate claimed is reasonable. *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Under Fifth Circuit precedent, the appropriate hourly rate to be used in computing the lodestar is the "prevailing hourly rate in the community for similar work." *Pilgrim's Pride*, 690 F.3d at 655. As a general rule, the appropriate locality to determine customary fees for the lodestar is the district in which the case is pending. *McClain v. Lufkin Indust., Inc,* 649 F.3d 374, 381 (5th Cir. 2011).

"Reasonable hourly rates are to be calculated using the prevailing market rates in the relevant community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The Court may also rely on its knowledge of customary billing practices in the community to help establish a reasonable rate. *Lawler v. Teofan (In re Lawler),* 807 F.2d 1207, 1212 (5th Cir. 1987). The Court considers fee applications on a regular basis and is familiar with the rates charged and collected by bankruptcy counsel in this district. Ms. Maddox's requested rate of $275 is well within the prevailing rates in the community for attorneys with reasonably comparable skills, experience and reputation. Again, the Debtors do not argue otherwise.

Accordingly, the lodestar in this case is calculated by multiplying the 55.5 hours expended by Ms. Maddox by her $275.00 reasonable hourly rate, resulting in a total of $15,262.50.

### C. Adjustments to the Lodestar

Having determined the appropriate lodestar fee, the Court must now decide whether application of the § 330(a) factors and the *Johnson* factors warrant an upward or downward adjustment of that fee. Section 330(a) provides, in relevant part:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The twelve *Johnson* factors are:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

*Johnson,* 488 F.2d at 717. These factors guide the Court's discretion in determining whether or not the lodestar requires adjustment. Courts have "considerable discretion when determining whether an upward or downward adjustment of the lodestar is warranted." *Pilgrim's Pride,* 690 F.3d at 656. Ms. Maddox has not requested an enhancement of the lodestar fee, nor have the Debtors requested a reduction of the lodestar. The § 330 and *Johnson* factors overlap with each other and with the method used by the Court to calculate the appropriate lodestar fee.

The Court addressed the first two and the last § 330(a) factors in its calculation of the lodestar. The Court also finds and concludes that Ms. Maddox's services were both necessary to the administration of the Debtors' estate and were beneficial at the time they were rendered. The services resulted in $55,000 of asset value becoming available to the estate that the Debtors attempted to exempt. In addition, the services were performed

10

within a reasonable amount of time, and through her successful prosecution of the Trustee's Objection to the Debtor's Exemptions, Ms. Maddox has demonstrated skill and experience in the bankruptcy field. Likewise, the first, second, third, fifth, sixth, ninth, and twelfth *Johnson* factors are also fully reflected in the lodestar calculated by the Court. Factors already considered in computing the lodestar can only form the basis of a fee enhancement in "rare and exceptional circumstances." *Pilgrim's Pride*, 690 F.3d at 656. No such rare or exceptional circumstances exist in this case.

Ms. Maddox did not argue that she was precluded from any other employment by its participation in this case, nor did she contend that there were time limitations imposed by the Trustee or otherwise that would warrant an adjustment of the lodestar. Neither the amounts involved nor the results obtained in this case warrant an adjustment, upward or downward, of the lodestar. The case is not undesirable, and the nature and length of Ms. Maddox's relationship with the Trustee is not unique and does not warrant a reduction or increase in the lodestar. Finally, there is no evidence in the record regarding awards in similar cases. After considering each of the *Johnson* factors, no adjustment in the lodestar is warranted in this case.

### D. Tenancy by the Entirety

As set forth in the Court's prior order, should the Trustee choose to liquidate the Debtors' homestead, any non-exempt equity in the Debtors'

11

homestead may be administered only to the extent of the joint claims against the Debtors (Dkt. # 117). This includes joint administrative claims, such as the compensation allowed under this Order. Discover is no longer the only joint claimant against the Debtors' estate.

## IV.  CONCLUSION

The compensation requested by Ms. Maddox in her Application is reasonable in both the amount of time expended and the rate charged pursuant to § 330 and in light of the *Johnson* factors. Accordingly, is hereby

**ORDERED, ADJUDGED, AND DECREED** that the Application is **APPROVED.**

##END OF ORDER##